The first case we're going to hear is Mulyani v. Holder and Mr. Fogel. You're ready. May it please the court. My name is H. Glenn Fogel, Jr. I represent the petitioner Mulyani in this case. I'd like to begin. This case is about a clear legal error and abdication of duty on the part of the Board of Immigration Appeals and the immigration judge. I'd like to begin with a quote from this court that issued a case this year. The case is I. U. H. Chen v. Holder. It's 742 F. 3rd 171. In that case, this court quoted Judge Posner from the Seventh Circuit stating, The BIA should avoid treating country reports as wholly writ, immune to contradiction. And then further stated, Although our job as reviewing the court is not to reweigh the evidence, we must ensure that unrebutted, legally significant evidence is not arbitrarily ignored by the fact finder and that the agency does not base its decision on only isolated snippets of the record while disregarding the rest of the case. That's what happened here, Your Honor. What was disregarded? There's a multitude of evidence. There's a multitude of evidence in the record. The record is over a thousand pages long. Initially, when the application for asylum was submitted, there was a ton of evidence submitted with that, including the country reports, U.S. country reports for 2000 and 2001, which talk about the time, around the time when the petitioner here was persecuted. She was persecuted in the 1990s. The judge here... The 2000 report, country report, was relevant for that, isn't it? It is, because what happened, it talked about all the events that were going on and the religious persecution that was going on in Indonesia at the time. Yeah, and you need to read it with a little bit of circumspection. I mean, Indonesia has been a country that has had difficulty in its religious situation. And as a policy matter, they're trying to improve. And the difference shows, the 2008 report shows a better situation. But most of the problems were in the eastern part of Indonesia, weren't they? At the time, but not the whole... I mean, it was really pervasive. I'm talking as a general matter. You're reading these reports, and you're trying to find out whether this woman was the victim of state persecution or state-sponsored or state-tolerated persecution, as opposed to private attacks by Muslim gangs. And she did suffer some ill treatment. The question is, where is the evidence that the state stood by? And as a matter of fact, one of the incidents, apparently the attack broke off when the sirens were heard and the police were coming. So there's some indication that these were outlaws and not the state itself. And I think the factual finding in this case was that there's not enough evidence to support that the state was behind these or tolerated it. Well, the state doesn't have to be behind that. It has to just be a group that the government is unwilling or unable to control. Basically tolerated, standing by. Well, unwilling or unable to control. It doesn't mean that they're... So what evidence is there that they were unwilling or unable to control it? Well, the whole evidence, I mean, this is a country of about 90% Muslim. And the evidence in the record, there's plenty of evidence in the record that clearly indicates that there was ongoing persecution of Christians. Did she ever report any of the instances to appropriate authorities and be turned away? No, she didn't, because she was afraid to. She was afraid that she didn't think that it was going to do any good. And our own State Department report actually supports that. The 2000 State Department report actually supports that. And I can point the court to that. I understand the concern that it makes for a difficult argument, though, to say, at least with respect to relief under the Convention Against Torture, that she would be more likely to be tortured under official acquiescence or instigation if she never reported any of the instances of ill treatment to the authorities. That's correct, but what she had was... What we're talking about, my main argument here is the past persecution. The immigration judge found this was past persecution. Then he said, oh, well, she didn't show that the government was unwilling or unable to protect her based on this 2008 country report 10 years later. Again, without going through multitudes, there's all kinds of articles that talk about all the churches, 500-and-something churches that have been destroyed in the past couple of decades. The continual persecution and even State basically acquiesced or supported persecution of Christians. And I'm not going to say that it hasn't gotten better since 2008. It still exists, but it's not as prevalent. But at the time that she was persecuted, which you need to look at, if she was a victim of past persecution, there's a presumption that there's a well-founded fear of future persecution, which the government has to rebut. And there was no discussion about any of that at all other than the judge said, well, she was past persecuted, but I find that the government of Indonesia is not unwilling or unable to protect her based on one line of a country report in 2008. The standard for us accepting your argument that the government did basically stand by or was unable or refused is really a factual finding, and we have to find that the record compels a finding in your favor. Otherwise, we defer to the agency, don't we? That is correct, Your Honor, and I would say that it does. I mean, it clearly does because what the immigration judge and the BIA, what their duty is, they have to examine the whole record. They can't take one line out of a 2008 country report, which is, again, I think it's disingenuous to use that to say that the government was unwilling or unable to help her back in the 1990s. I'll just read from the 2000 country report, which is administrative. It's at the administrative record 817, but it has the following things to say about, and this is where I say the record does compel. This is even from our State Department report, not the 50-plus articles from various reputable news organizations that describe the religious persecution in Indonesia, but it talked about the thousands of Christians in Malacca who were first to convert to Islam. Attacks against houses of worship continued, and the lack of an effective governmental response to punish perpetrators and prevent further attacks led to allegations of official complicity in some of the incidents. The government, and this is our country report, the government was ineffective in deterring social, interethnic, and interreligious violence that accounted for a majority of deaths by violence during the year. And then that's at administrative record 819. Closures and attacks on churches, temples, and other religious facilities increased during the year according to the Indonesian Christian Communications Forum. The ICC recorded 122 religiously motivated attacks on Christian churches or other facilities in the year. Then it goes on to say the government failed to suppress or respond to most cases of violence and did not fully resolve many of the cases of attacks on religious facilities and churches that occurred during riots. And in other cases, the government did not investigate such incidences at all. That's at administrative record 845. That's our own State Department report, which is a very general summary and obviously doesn't include many, many things. But the record has been supplemented by many, many articles. I mean, it's not a secret. Is there any evidence in that report that indicates that it was the government policy to have free religions and to have multiple religions within the country? Well, that's in the Constitution. I'm just talking about in the report. Yes, in the Constitution, that's what the report says. But in actual practice for the government to be able to not only that, they can say that they support the freedom of religion and tolerance and I believe the president at the time was actually trying to do that. But that doesn't mean that... Isn't that pretty difficult to overcome if it's a government policy and he was trying to do it and took steps to do it? Sure, there have been problems there, but does it compel a finding that her situation was basically government action? Again, Your Honor, I don't think we're saying that it's government action. It's government... It's got to be persecution by government. The standard is whether the government basically tolerated it or didn't. And it is tolerated, right. And I would say that it's tolerated, Your Honor. One incident that Judge Niemeyer, I believe, referred to is Guiliani's own testimony that an abusive group dispersed as soon as it heard a police siren, which at least seems to suggest that there was fear of it or at least reaction to the threat of law enforcement. And the Department of State report from 2010 does indicate attempts by the government to prosecute the perpetrators of religious-based abuse. Not with complete success, but at least attempts to do so. Yes, Your Honor, I'm not saying that there's no police there. There are, but that does not mean that they're able to control it. And I would say at the time, the country reports and the articles submitted that show hundreds and thousands of people killed and Christians killed by Muslims, hundreds of churches bombed, hundreds of churches attacked, mobs attacking Christians, Muslim mobs attacking Christians. That doesn't mean that the government supports that, but they're complicit with it because they can't, they're unable to, being unable to actually control them is another thing. It doesn't, you can say, oh, I would like to, you know, the government can say, well, we would like to have freedom of religion, but the actual fact is on the ground they're not doing that. And I think that's what the, that's what the country, our country report says that they were ineffective. They're completely ineffective and did not follow up or investigate these instances of religious violence. And that's just the country report. I mean, there's many, many, many articles that are submitted that are in the record about all the churches being closed. If the government is supporting freedom of religion, how come 500 churches are closed in a decade? I mean, it's, and these, you know, Muslim attacks are allowed, these Muslim groups are allowed to go to islands and start a holy war with, you know, with the government standing by. I think the, I think the key here, and the first thing I really wanted to point out is that they, the record was not, you know, was not fully reviewed here. The, most, much of the evidence in the record has been ignored. And that you can't use something that, you can't use a country report from 2008 to say that things that happened during the 1990s, that things that happened during the 1990s show that  And, you know, it's an unfortunate situation, but that's the fact. But the main point is that they have to review the whole record, they have to consider the whole record, and that wasn't done here. And past persecution was found here, and there's a presumption of a well-founded fear of future persecution. And that was completely overlooked. Okay, thank you. You do have some rebuttal, Mr. Kelch. Good morning. May it please the court, my name is Greg Kelch, and I represent the Attorney General. The term persecution requires a showing of harm either by the government or forces that the government is unable or unwilling to control. In this case, Ms. Mulyani did not report any of the mistreatment she experienced in Indonesia to the police, including, as the court noted, the events that occurred during a 1998 riot when the police did mobilize and Ms. Mulyani testified that her attackers ran away when they heard the sirens. Looking at the background documents in this case, they show that there is a constitutional right to freedom of religion in Indonesia, that the government generally respects those rights, and that Catholicism and Protestantism are two of the officially recognized churches in Indonesia. So because Ms. Mulyani has not demonstrated that the government is unwilling to protect her, it follows that she hasn't demonstrated a fear of persecution, and therefore she is not properly considered a refugee under the Immigration Act. Mr. Fogel notes to the court this morning that there is evidence in the background documents about violence against churches in Indonesia. I do want to point out to the court that there does appear to be some controversy in Indonesia about the building of Christian churches. Muslim communities are concerned about how many are being built, are they being built in our neighborhoods. However, I would remind the court that Ms. Mulyani testified that she does not attend church. She worships at home, and that's on pages 193 and 275 of the record. So therefore, in all of the events that she discussed happening to her in the past in Indonesia were not at her church. These were events that happened while she was a student and again during a riot in 1998. I do want to make clear that Ms. Mulyani argues in her opening brief that perhaps the immigration judge found her to be per se ineligible for asylum because she did not go to the police. And that's not what happened in this case. The immigration judge makes clear that he was looking at the background documents and all of the evidence of the record. Now the burden of proof in the case was on Ms. Mulyani. She testified to incidents that occurred in 1991 and in 1993 and two that occurred in 1998. She did not provide country reports for those years. The closest that we have are the 2000 and 2001 country reports that were attached to her asylum application. That was the one that was filed on her behalf by an immigration consultant without her knowledge. The immigration judge in looking at the case, he cited the 2008 International Religious Freedom Report presumably because that's the report that she provided in immigration court. So he was signaling to the parties that he did review in particular that report that she seemed to find important enough to sit during the hearing and recognize the adverse evidence that was in it but made a factual determination that the evidence of record does not demonstrate that the government is unable or unwilling to protect her. That is a factual determination that this court must defer to unless it is compelled to include otherwise. If there are no further questions, I will conclude by saying again that the court should affirm or deny the petition for review. Thank you, Mr. Kelly. Mr. Fogle? Thank you. As a matter of rebuttal, it's not just churches that were attacked and the evidence in the record does not just show that churches were attacked. That's one of the things that happened. Thousands of Christians were killed. The mob, particularly during 1998, mobs of Muslims in Jakarta and other major city centers. Does the record show that those 1998 riots were the government attempted to put them down? Yes, the government did attempt to put them down. But that doesn't mean that they're able to control it. In fact, I think that's what our country report says, that they allowed a lot of that when there was large groups of people that they just let it happen. Well, this isn't about how they attempted to put them down. When they're notified, they come and attempt to put them down and we don't hear the result of whether they were successful. We do know that she reported that the crowd about her dissipated when the effort was made. That's true, but again, that doesn't mean that they could ultimately control it. Because what would happen, I mean, there's only so many police. I understand, but they controlled it with respect to her. The crowd that was about her and was attacking her and her locusts dissipated when they heard the sirens and the government was making its effort. Well, we don't even know. I mean, again, we don't actually know that the government was trying to protect her individually. But that's indicative of something, isn't it? It's hard to conclude that if there's a riot and she's affected by the riot adversely and the sirens go and the crowd then runs and dissipates, that that is government action? It is government action, but it did not prevent the harm that happened to her and it did not prevent what the immigration judge found to be cumulative persecution. The question is whether the persecution she suffered was at the instance of the state's unwillingness or inability to control or its own participation, all suggesting that it's state action. But the whole effort here is to find out whether she's being persecuted by the state and not by riots or gangs. And the state is implicated if it's unwilling to basically stand by, unwilling or unable to control it. The problem is that religious persecution was allowed by the state. And I think that's what our country reports say. In this particular incident, she may have saved her life that they ran away. I think part of the problem is the sources that you cite to us do not say that the government, that religious persecution was allowed by the state and the state was unable to control but did attempt to control it as best it could. But if you were to prevail on the, if we were to grant the petition for review on the asylum claim, couldn't the BIA on remand just find that it was untimely? Because it accepted, it didn't review the IJ's finding that the petition for asylum was untimely because it was filed past the one-year deadline. They still have to review the whole record. If there's past persecution, there's a well-founded fear of future persecution. I'm saying that if we granted your petition for review and it went back, they still have the availability of untimeliness arguably to dispose of at least the asylum claim because that was also an IJ finding. That's correct, and they could do that. But then there's the withholding claim. And our whole argument here is all along. Immigration judge found past persecution. She's entitled to a presumption of future persecution that the government has the burden of disproving, I mean of rebutting, and that's where without a look at the whole record here and without showing that they've properly looked and considered the whole record and found that she didn't meet her burden, then I think it has to be. Isn't the burden of proving a withholding claim higher than the burden of proving an asylum claim? It is, but when there's past persecution, there's a presumption of a well-founded fear of future persecution, which is what the immigration judge found. And he believed her as well. He found her credible, so he has to take into account that her going to the police wouldn't have done any good. And our country reports states that when it talks about women reporting rape, that they're afraid to go to the police because the police don't do anything. Okay. I see your red lights on. We'll come down and greet counsel and then proceed on to our next case.
judges: Paul V. Niemeyer, Allyson K. Duncan, Stephanie D. Thacker